```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF PENNSYLVANIA
_____
                              :
JONI WRIGHT, ET AL.           :    CIVIL ACTION
                              :
            Plaintiffs,       :
                              :
     v.                       :    NO. 10-431
                              :
LEHIGH VALLEY HOSPITAL        :
AND HEALTH NETWORK, ET AL.    :
                              :
            Defendants        :
_____:

ARNOLD C. RAPOPORT                              January 20, 2011
UNITED STATES MAGISTRATE JUDGE
```

**MEMORANDUM OPINION AND ORDER**

I.   INTRODUCTION

Presently pending before me in this action under the Fair Labor Standards Act ("FLSA") is Plaintiff Joni Wright's Second Motion to Proceed as a Collective Action and Facilitate Notice Under 29 U.S.C. § 216(b). Wright's first motion seeking such relief was denied by Judge Schiller in a Memorandum and Order dated August 24, 2010 ("August Memorandum"). Judge Schiller reasoned that Wright, a registered nurse who claimed that she was not paid for time she was required to work before and after her scheduled shifts, had failed to proffer any admissible evidence that would allow the Court to infer that other current or former registered nurses employed by Lehigh Valley Hospital and Health Network ("the Network") and its constituent hospitals endured deprivations similar to those Wright allegedly experienced. August Memorandum at 6. Judge Schiller permitted Wright the

opportunity to re-file the motion to cure the defects he outlined.[1] For the reasons that follow, I find that Wright has now proffered sufficient evidence to demonstrate that a collective action is proper.

II. FLSA COLLECTIVE ACTIONS

In the August Memorandum, Judge Schiller ably set forth the law applicable to certifying a collective action under the FLSA[2]:

> The FLSA requires employers to compensate their employees at one and one-half times the employees' hourly wage for hours worked in excess of forty hours per week. 29 U.S.C. §§ 206-07. "Additionally, the FLSA requires employers to keep wage and hour records, and creates a right of action for covered employees." Walker v. Washbasket Wash & Dry, Civ. A. No. 99-4878, 2001 WL 770804, at *6 (E.D. Pa. July 5, 2001) (citations omitted). The FLSA permits "one or more employees to pursue an action in representative capacity for 'other employees similarly situated.'" Aquilino v. Home Depot, Inc., Civ. A. No. 04-4100, 2006 WL 2583563, at* 1 (D.N.J. Sept. 7, 2006) (quoting Mortisky v. Pub. Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 496 (D.N.J. 2000)). Wright must demonstrate that the proposed class satisfies two requirements: "(1) class members are 'similarly situated,' and (2) class members affirmatively opt into the action." Bamgbose v. Delta-T Group, Inc., 684 F. Supp. 2d 660, 667 (E.D.Pa. 2010) (citations omitted).
> Courts employ two stages of analysis when deciding whether to certify an FLSA collective action. During the initial notice stage, "the court determines whether a class should be conditionally certified for the purpose of notice to potential opt-in plaintiffs and

---

[1]After issuing the August Memorandum, Judge Schiller referred this matter to me for pre-trial management and settlement. See Order of 9/15/2010.

[2]Judge Schiller also recounted the facts alleged in the complaint, see August 24 Memorandum at 1-3, which I incorporate by reference.

for pretrial discovery regarding their individual claims." Kuznyetsov v. W. Penn Allegheny Health Sys., Inc., Civ. A. No. 09-379, 2009 WL 1515175, at *1 (W.D.Pa. June 1, 2009). At the notice stage, the court should review the pleadings and affidavits of the parties to decide if the proposed class consists of similarly situated employees. Id.

If the plaintiff carries her burden, the court will conditionally certify the class for the purpose of notice and discovery. Id. (citing Armstrong v. Weichert Realtors, Civ. A. No. 05-3120, 2006 WL 1455781, at *2 (D.N.J. May 19, 2006)). The second stage or "decertification" stage occurs at the close of class-related discovery, when the defendant may move to decertify the class. Bamgbose, 684 F. Supp. 2d at 668.

. . .

[T]he Court will require Plaintiffs to make a basic or modest factual showing that the proposed recipients of opt-in notices are similarly situated to the named Plaintiff. [Smith v. Sovereign Bancorp, Inc. Civ. A. No. 03-2420, 2003 WL 22701017, at *3 (E.D.Pa. Nov. 13, 2003).] This conclusion is in line with the bulk of courts in this Circuit that have considered the issue. See, e.g., Krstic v. J.R. Contracting & Envtl. Consulting, Civ. A. No. 09-2459, 2010 WL 395953, at *2 (D.N.J. Feb.4, 2010) (citing Patton v. Thomson Corp., 364 F. Supp. 2d 263, 267 (E.D.N.Y. 2005)) (requiring a "modest factual showing"); Burkhart-Deal v. Citifinancial, Inc., No. 07-1747, 2010 WL 457127, at *1 (W.D.Pa. Feb.4, 2010) (quoting Williams v. Owens & Minor, Inc., Civ. A. No. 09-742, 2009 WL 5812596, at *2 (E.D.Pa. Oct. 9, 2009)) (same); Abercrombie v. Ridge, Civ. A. No. 09-468,2009 WL 3668112, at *4 (W.D.Pa. Nov. 4, 2009) (same); Andrako v. U.S. Steel Corp., Civ. A. No. 07-1629, 2009 WL 2855662, at *3 (W.D.Pa. Sept.2, 2009) (citations omitted) (same); Kuznyetsov, 2009 WL 1515175, at *2 (citations omitted) (same); Harris v. Healthcare Servs. Group, Inc., Civ. A. No. 06-2903, 2007 WL 2221411, at *3 (E.D.Pa. July 31, 2007) (citations omitted) (same). This is a lenient standard but requires some evidence beyond mere speculation that the defendant's policy affected other employees. See Anyere v. Wells Fargo Co., Civ. A. No. 09-2769, 2010 WL 1542180, at *2 (N.D.Ill. Apr. 12, 2010) ("A 'modest factual showing' . . . cannot be founded solely on allegations in the complaint; some factual support must be provided, such as in the form of affidavits, declarations, deposition testimony, or other

-3-

> documents." (quoting Molina v. First Line Solutions
> LLC, 566 F. Supp. 2d 770, 786 (N.D.Ill. 2007)));
> Burkhart-Deal, 2010 WL 457127, at *1 (quoting
> Kuznyetsov, 2009 WL 1515175, at *2); Bishop v. AT&T
> Corp., 256 F.R.D. 503, 507 (W.D.Pa. 2009).

August Memorandum at 3-6.

III. WRIGHT'S SECOND MOTION FOR COLLECTIVE ACTION

In her second attempt at seeking certification to proceed as a collective action, Wright has provided the Court with "Opt-In Consent Forms" from three registered nurses who worked as hourly employees (i.e., non-exempt employees under the FLSA) in the Patient Care Services Division at the Network's Lehigh Valley Hospital - Muhlenberg ("LVH-M") and who seek to participate in this collective action.  She asserts that these three nurses are similarly situated to herself because all were subject to the same unlawful payroll practices and treatment, namely that Defendants uniformly failed to accurately track and record hours actually worked by Wright and similarly situated non-exempt registered nurses, and failed to pay compensation and overtime compensation in accordance with the mandates of FLSA for compensable work performed before and after scheduled shifts.[3]

---

[3]In addition, Wright makes several contentions in a Declaration she signed in support of her current motion concerning the Network's alleged policies regarding registered nurses' lunch periods.  She contends that the Network automatically deducts from its non-exempt employees' salary a thirty minute lunch period, even though the employees are "on call" during this period and frequently do not take a full lunch period.  Wright also contends that, in the rare instance that she actually received a lunch break, she was required to perform work

-4-

(Pl. Mem. at 19.)

As previously detailed by Judge Schiller, Wright alleges that the Network requires its non-exempt nurses to arrive at work at least fifteen minutes in advance of their scheduled shift and stay at least fifteen minutes following the conclusion of their scheduled shift in order to attend meetings called "Report," during which the outgoing shift briefs the incoming shift on patients' status. (Compl. ¶¶ 25, 26, 40.) In some cases, Wright and her fellow registered nurses were required to stay in excess

---

functions during that time period. (Wright Decl. ¶¶ 4-8.) The Network notes that the allegations regarding employees being on call during lunch periods, working through lunch periods, and receiving less than thirty minute lunch periods, are not contained in the complaint, and thus are irrelevant to the Motion. While I note that the complaint does contend in more general terms that employees were not properly compensated and/or paid overtime compensation for all times that they worked and that the Network failed to accurately track, record and report all the hours worked by non-exempt employees, see, e.g., Complaint ¶¶ 53-54, I find that any suggestion by Wright that the lunch period issue can independently support certification is belied by the relief Wright seeks in her Motion. Wright asks that the Court provide notice "to all present and former employees of Lehigh Valley Hospital and Health Network who were designated, paid, or employed as a registered nurse within the past three (3) years and were required to attend report before their scheduled shifts, after their scheduled shifts, and/or otherwise performed job duties prior to and/or after the completion of their scheduled shifts for which they were not compensated." Pl. Mot. at 1-2. Although both Wright and one opt-in claimant discuss the lunch period issue in their Declarations, it remains that the Motion is focused solely on the assertion that Wright is similarly situated to other non-exempt nurses who were required to attend Report and perform job duties before and after their scheduled shifts without receiving compensation. I offer no opinion at this time whether the lunch period issue is properly before the court.

of two hours after their shifts concluded. (Id. ¶¶ 27, 41.) She alleges that registered nurses are not compensated for the work performed during this overtime. (Compl. ¶¶ 28-29, 42-43.) Wright's payroll checks from the Network allegedly fail to accurately state the number of hours she worked and instead compensate her on a "per shift" basis rather than for all hours worked as the FLSA requires. (Compl. ¶ 46; Wright Decl. 10.) Wright's Declaration notes that throughout her employment she worked alongside other registered nurses who similarly worked before and after their shifts without being properly paid. (Wright Decl. ¶ 15.)

The fault identified by Judge Schiller in the August Memorandum is that Wright failed to provide any admissible evidence to support this last assertion, which is key to her attempt to certify a collective action. The only submission she provided with her first motion was the hearsay declaration of counsel asserting that he had a phone conversation with another unnamed Network employee who suffered similar deprivations. August Memorandum at 3.

The material submitted with the current motion attempts to cure the previous defect. Wright has submitted Opt-In Consent Forms signed by her fellow Network-employed registered nurses Lisa Citrola, Joi E. Meeker, and Linda Heidig. (Pl. Ex. 1.) Each of these coworkers were employed by the Network at LVH-M in

positions similar to Wright, during the same time period, as non-exempt registered nurses, and claim that their hours were not properly tracked, recorded and reported by the Network, and that each was not compensated for all hours actually worked. (Id.) Each coworker reports witnessing other non-exempt registered nurses who performed similar job duties and were not compensated for all hours worked. (Id.) Finally, Meeker and Heidig, but not Citrola, report witnessing other non-exempt nurses working more than forty hours per week without being properly paid overtime compensation. (Id.)

Wright has also submitted the Declaration of Joi Meeker, in which Meeker attests that she was required to arrive at least fifteen minutes prior to her scheduled shifts and to stay, at a minimum, fifteen to twenty minutes after her shifts, and was not compensated for this time. She asserts that she often worked in excess of forty hours per week without receiving overtime compensation, that her hours were not accurately tracked, that she was not required to document her work time and the Network did not have any means to track her work time. She also asserts that she witnessed other non-exempt nurses who suffered similar deprivations. (1st Meeker Decl. ¶¶ 5-10, 16.)

In response, the Network asserts that Wright's submissions do not constitute admissible evidence that she is similarly situated to the thousands of other current and former non-exempt

-7-

Network nurses with regard to "a common policy or plan violative of the FLSA." (Def. Mem. at 6 quoting Burkhart-Deal, 2010 WL 457122,at *4). According to the Network, the "touchstone of conditional certification is a common injury allegedly flowing from a policy, practice or plan uniformly applicable to all members of the proposed collective." (Id. at 7.) It argues that Wright has failed to meet her burden to go forward collectively because her evidence does not show that she, or any other employee, was injured as a result of a common policy, practice or plan violative of the FLSA. Rather, the Network contends, she asserts only that the Network's otherwise FLSA-compliant policies were applied in a non-compliant manner. (Id.)

The Network's argument misstates the lenient standard applicable to the current motion and the Court's proper focus in deciding it. Wright need only show some evidence beyond mere speculation that the Network acted in a manner that affected her in the same way that it affected other similarly situated employees. More importantly, my role at this stage of the proceedings is not to weigh the merits of conflicting factual issues undergirding the claims. I find that the Network's reliance on Burkhart-Deal to support its "common injury / common plan" contention is misplaced. In that case, the court applied the same "modest factual showing" standard both Judge Schiller and I apply, requiring only that a plaintiff demonstrate a

"factual nexus between her situation and the situation of other current and former employees, sufficient to determine that they are similarly situated." Id. at *1 (citing Kuznyetsov, 2009 WL 1515175, at *2).

In applying this standard, the Burkhart-Deal court too was faced with – and rejected – an argument that if a plaintiff concedes that the defendant's official policies are FLSA-compliant, and states only that her injury resulted from sporadic violations of that official policy, collective action would not be appropriate:

> Essentially, Defendant argues that sporadic violations of a formal policy do not a "policy" makes [sic]. It is true that the fact that some employees of a large corporation were not properly compensated pursuant to the FLSA does not provide legitimate grounds for inferring an illegal, companywide policy. Saleen v. Waste Mgmt., 649 F. Supp. 2d 937, 941 (D.Minn. 2009). The fact that Defendant has a written policy requiring overtime pay, however, does not itself defeat conditional certification. Burch v. Qwest Communs. Int'l, Inc., 500 F. Supp. 2d 1181, 1188 (D. Minn. 2007). These arguments, moreover, skirt the merits of Plaintiff's claims. It is inappropriate, at this stage in the litigation, for me to consider those merits. . . . Defendant will have the opportunity to reiterate its arguments at the second stage of the certification process.

Burkhart-Deal at *3 (internal footnote and citations omitted).

Later in its opinion, in rejecting the scope of the collective group of employees that its plaintiff sought to represent, the court had occasion to comment that "the evidence belies Plaintiff's assertion that [financial service

representatives] nationwide were victims of the *same unlawful policy or practice*." Id. at *4 (emphasis added).  I do not read that statement as requiring that a named plaintiff needs to make a modest factual showing of a common injury and common plan at the conditional certification stage.  Rather the modest factual showing must be that the plaintiff is similarly situated to those she seeks to represent.  It may well be that the Network's arguments concerning its policies, as well as its other arguments based on counter-contentions regarding the Network's "One-Staff Timekeeping System," whether Report occurs within the shift or before it, and its lunch period policy will ultimately lead to decertification or recur at the dispositive motion stage.  However, I find that these arguments are clearly premature.

Alternatively, the Network argues that Wright has not made a modest factual showing that she is a proper representative of all Network nurses.  It contends that if certification is conditionally granted it should be limited to the non-exempt nurses who worked at the same units as Wright and the other opt-in claimants, namely Unit 6T-M and the Emergency Department at LVH-M.  I find that the Network's argument is salient, but reaches beyond its grasp.

The focus of the pending motion is the assertion that Wright is similarly situated to all other non-exempt nurses who were required to attend Report before or after a shift without

compensation.  Wright has provided evidence that she is similarly situated to all nurses who worked for the Network in positions that required them to attend Report, not just to nurses who worked in the same Units where she and the other opt-ins worked.  Most of this evidence comes from declarations submitted by the Network in response to the prior motion.

Terry Capuano, the Chief Operating Officer of the Network's Lehigh Valley Hospital ("LVH") and LVH-M, stated that 1,752 nurses were employed by the Patient Care Services Division at LVH and LVH-M.  (Pl. Ex. 2.)  Dawn Gugliuzza, the manager of payroll at LVH and LVH-M declared that the Network uses uniform written policies, and employs a computer program called the One-Staff System to schedule and record time worked by non-exempt registered nurses.  (Pl. Ex. 6.)  Anne Panik, the senior vice president for the Patient Care Services Division declared that all non-exempt nurses who work in certain but not all PCS Units perform Report.  (Pl. Ex. 8.)[4]  I find, accordingly, that the Network's wish to limit the scope of the collective action to only the Units where Wright and the opt-ins work is overly constrictive.  The proper scope of the conditionally certified class, I find, is all non-exempt registered nurses employed by

---

[4] I note that the Declaration goes on to state, contrary to the allegations of the complaint, that Report is performed within the employee's shift, not before and after the shift, and is thus, compensated time.  Clearly, this issue will resurface as the lawsuit proceeds toward dispositive motions.

the Network in its Patient Care Services Division within the past three years who are or were required to attend Report as part of their job duties.

IV. CLASS NOTICE

Wright has provided a form of class notice for approval by the Court. The Network makes five objections to the proposed notice.[5]

The Network argues that the notice fails to inform the recipient that the Court has taken no position on the merits of the lawsuit. I agree that such a statement must be included. It is well settled that in "oversee[ing] the notice-giving process," the Court "must take care to avoid even the appearance of a judicial endorsement of the merits of the action." See

---

[5]Wright concedes that one objection is meritorious, namely that a statement to the effect that the Network denies the allegations of the complaint should be included in the notice. Wright accepts as written a statement drafted by the Network, denying that it has any policy or practice requiring registered nurses to work unpaid overtime or otherwise perform work before or after their scheduled shifts without compensation. Because the Complaint and the Motion focus their contentions on the failure to compensate for time worked by registered nurses before and after their shifts, the portion of the Network's proposed statement regarding unpaid lunch periods need not, for the reasons I have outlined, be included.

The Network also argues that Wright's request for telephone contact information of possible class members is improper. Wright concedes that the telephone information should be the subject of a protective order. The parties are directed to draft a proposed order for submission to the Court within ten days. If the parties are unable to agree to a proposed order, either may submit a form of order within fifteen days and/or respond to their opponents' submission(s) within twenty days.

Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 174 (1989). The following statement regarding the Court's neutrality is common in FLSA notices and should be added in bolded, all capital letters, as a separate paragraph at the end of the proposed Notice's "SECTION II DESCRIPTION OF THE LAWSUIT": "**THE COURT HAS TAKEN NO POSITION ABOUT THE MERITS OF PLAINTIFF'S CLAIMS OR DEFENDANT'S DEFENSES**". See e.g. Russell v. Illinois Bell Tel. Co., 575 F. Supp. 2d 930, 938-39 (N.D.Ill. 2008) (holding that this language, written in bolded, all-capital letters, sufficiently conveyed the Court's neutrality as to the merits of the action).

The Network next contends that the description of the proposed recipient group is overly broad. Because I have limited the scope of the proposed collective action, I find that alterations to the proposed notice are required. The first sentence of the proposed Notice's "SECTION II DESCRIPTION OF THE LAWSUIT" should be altered to read substantially[6] as follows:

> On or about January 29, 2010, Joni Wright ("Named Plaintiff") initiated this lawsuit against Defendants Lehigh Valley Hospital and Health Network, Lehigh Valley Hospital, Lehigh Valley Hospital - Cedar Crest, Lehigh Valley Hospital - 17th Street, and Lehigh Valley Hospital - Muhlenberg ("LVH") on behalf of herself and all present and former employees of LVH who were employed as a non-exempt registered nurse in the Patient Care Services Division and who were not compensated for work required to be performed before

---

[6]The parties are at liberty to agree on alternate wording the encapsulates my holding.

and after their scheduled shifts.

Additionally, because Wright did not specifically request relief for her motion based upon her additional assertion regarding unpaid lunch periods, the words "and during unpaid lunch periods" appearing in the second paragraph of Section II must be stricken. Section IV titled "COMPOSITION OF THE CLASS" should be altered to add at its end the words "and were not compensated for work required to be performed before and after their scheduled shifts."

Next the Network argues that Section III of the proposed notice entitled "NO RETALIATION PERMITTED" is unwarranted and should be stricken because Wright makes no allegation suggesting that the Network intends to retaliate against opt-in plaintiffs. The Network cites to Heckler v. DK Funding, LLC, 502 F. Supp. 2d 777, 779 (N.D. Ill. 2007) to support its contention. Heckler, however, is inapposite to the Network's contention. It held only that the wording chosen by the plaintiff might be read by the notice recipients to suggest that retaliation was likely, and determined that it would edit the proposed notice to attempt to make it less opaque. Id. The court did not hold that such a provision was improper in the absence of a specific retaliation allegation. "No retaliation" provisions have been inserted in FLSA notices. See e.g. Cheesman v. Nexstar Broad. Group, Inc., Civ. A. No. 07-360, 2008 WL 2225617, at *3 (S.D.Ind. May 27,

2008). I find nothing in the proposed language that would improperly suggest to a proposed opt-in plaintiff that its inclusion indicates that the Network actually harbors any intent to retaliate.

Finally, the Network insists that the notice include a provision informing potential opt-in plaintiffs that they may be responsible for payment of court costs if the court ultimately deems that the Network is a prevailing party in this lawsuit. I find this objection meritorious. Courts have awarded costs to prevailing defendants in FLSA cases and have required named plaintiffs to include information about this possibility in the notice sent to potential opt-in plaintiffs. <u>Creten-Miller v. Westlake Hardware, Inc.</u>, Civ. A. No. 08-2351, 2009 WL 2058734, at *4 (D.Kan. July 15, 2009) (collecting citations and holding that notice should inform recipients about the possibility that they may be responsible for court costs). The paragraph entitled "VI. EFFECT OF JOINING THIS SUIT" should be altered to add between its second and third sentences, language reading substantially as follows:

> Additionally, if the Court determines that Lehigh Valley Hospital and Health Network is a prevailing party in this lawsuit, court costs and expenses may possibly be assessed against you.

V.  CONCLUSION

For the reasons I have expressed, I grant Wright's Second Motion to Proceed as a Collective Action and Facilitate Notice

-15-

under 29 U.S.C. § 216(b).