IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

--------------------------------------------------------------------
JONI WRIGHT, individually and on　　　　　:
behalf of all others similarly situated,　　　:
　　　　　　　　　　　　　　　　　　　:　　　Civil Action No.: 10-431 (ACR)
　　　　　　　　Plaintiffs,　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　v.　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
LEHIGH VALLEY HOSPITAL AND HEALTH　:
NETWORK, LEHIGH VALLEY HOSPITAL,　:
LEHIGH VALLEY HOSPITAL – MUHLENBERG,　:
LEHIGH VALLEY HOSPITAL – 17TH STREET,　:
AND LEHIGH VALLEY HOSPITAL – CEDAR　:
CREST,　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Defendants.　　　　　　:
--------------------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S MOTION FOR
AN ORDER AWARDING ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES**

**Sobol, Sobol & Murphy, P.C.**
Michael Murphy, Esquire
Martin J. Sobol, Esquire
Daniel J. Sobol, Esquire
1760 Market Street-Suite 1200
Philadelphia, PA 19103
215-988-0100
Fax: (215) 988-0193
*Attorneys for the Class*

Dated: July 9, 2012

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION…………………………………………………………….. 1

II.    BACKGROUND…………………………………………………………….... 1

III.   THE AWARD OF ATTORNEYS' FEES IS FAIR AND REASONABLE…….. 5

      A.     A Reasonable Percentage of the Settlement Amount is the Appropriate
            Method of Awarding Attorneys' Fees in Common Fund Cases ....….…... 5

      B.     Forty Percent of the Settlement Amount is an Appropriate Fee in
            this Case …...…………………………………………………….…....... 8

            1.    Size of the Fund Created and Number of Persons Benefited……. 9

            2.    Presence or Absence of Substantial Objections to the
                 Proposed Attorneys' Fees…………………....……………...…10

            3.    Skill and Efficiency of the Attorneys Involved…………..……... 12

            4.    Complexity and Duration of the Litigation……..…………..…… 13

            5.    Risk of Nonpayment……………………………………..…… 15

             6.    Amount of Time Devoted to the Case by Class Counsel ….......... 16

            7.    Awards in Other Common Fund Cases…………………...….… 17

      C.     A Lodestar Cross-Check Demonstrates That The Fee Is Reasonable..… 19

IV.   THE COURT SHOULD AWARD COUNSEL'S COSTS AND EXPENSES... 20

V.    CONCLUSION…………………………………………………………… 21

I.     **INTRODUCTION**

Class Counsel respectfully submits this Memorandum of Law in Support of their Motion for an Award of Attorneys' Fees and Reimbursement of Expenses in connection with the final resolution of this litigation.  The attorneys' fees are to be paid from the proposed $4.5 million settlement (the "Common Fund" or "Settlement Amount") with Defendants, Lehigh Valley Hospital and Health Network, Lehigh Valley Hospital, Lehigh Valley Hospital – Muhlenberg, Lehigh Valley Hospital – 17th Street, and Lehigh Valley Hospital – Cedar Crest ("LVHN" or "Defendants").[1]  Because an attorneys' fee award amounting to 40 percent of the Common Fund created is appropriate and reasonable in this case in view of the risk involved, the work performed, and the exceptional result achieved, and because Class Counsel's requested costs and expenses of $43,339.03, which were incurred in the successful prosecution and settlement of this case, are reasonable, Class Counsel respectfully requests that the Court grant this Motion.

II.    **BACKGROUND**

As the Court is aware, on or about January 29, 2010, Joni Wright ("Class Representative") initiated this lawsuit against Defendants on behalf of herself and all present and former similarly situated non-exempt registered nurses of Defendants who are or were employed in the Patient Care Services Division ("PCSD").  The substance of Wright's claim is that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., by failing to pay compensation and overtime wages for all compensable work performed.  This matter, which is assigned Civil Action No. 10-431,

---

[1] The settlement reached in this matter is encompassed in a Joint Stipulation of Settlement and Release (the "Settlement Agreement"), which was filed with the Court along with the parties' Joint Motion for an Order Certifying Class for Settlement Purposes and Granting Preliminary Approval of the Settlement Agreement, Class Notice and Opt-Out Form. (See Docket Entry No. 146).

shall hereinafter be referred to as "Wright I."

On May 21, 2010, Wright filed a putative Class Action Complaint  ("Wright II") with the Court of Common Pleas, Lehigh County, at Civ. A. No. 2010-C-2555, to recover compensation owed to her and class members pursuant to the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1, et seq., and quasi-contract law. In Wright II, Plaintiff and the class seek damages and compensation for work performed for Defendants below the overtime threshold; damages which are not recoverable in Wright I.  As opposed to Wright I, which is an FLSA action, Wright II asserts state law violations under the WPCL and quasi-contract law.

 On or about March 30, 2011, Wright filed a second putative Class Action Complaint ("Wright III") on behalf of herself and all other similarly situated registered nurses with the Court of Common Pleas, Lehigh County, at Civ. A. No. 2011-C-1278. The substance of the Wright III Complaint is that Defendants failed to properly pay overtime compensation to Plaintiff, and all other registered nurses employed in the PCSD, in violation of the Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333, et seq. ("Minimum Wage Act" or "PMWA").  Pursuant to Pennsylvania Rule of Civil Procedure 1028(c)(1), Plaintiff subsequently filed an Amended Class Action Complaint in Wright III.  In her Amended Class Action Complaint, Lenia Rexrode, also a former registered nurse employed in Defendants' PCSD, was named as Class Representative along with Plaintiff Wright.  Collectively, Wright and Rexrode will be referred to as the "Class Representatives."

From January 2010 through April 2012, the parties engaged in substantial discovery practice.  In relevant part, the Defendants produced in excess of 20,000

documents which included, but were not limited to, the ANSOS Daily Sign-In Sheets, time cards and payroll records for all opt-in members, employment files of all opt-in members, meeting minutes, emails, and applicable wage and hour policies.  The parties also prepared and responded to Interrogatories and Requests for Admissions.  Finally, approximately thirty-nine (39) depositions were taken by the parties which includes Defendants deposing fifteen (15) Opt-In Plaintiffs and the Class Representatives deposing twenty-four (24) management-level employees.

The parties also engaged in substantial motion practice and engaged in extensive discovery activities, which occasionally necessitated Court intervention.  During the course of the approximately twenty-seven (27) months this matter was in active litigation, Class Counsel filed fourteen (14) motions, including two (2) motions for class certification, and the Defendants filed five (5) motions.  Furthermore, the parties participated in a total of twelve (12) telephonic conferences with the Court.

On January 4, 2012, and again on March 19, 2012, the parties participated in mediation sessions facilitated by Thomas Rutter, Esquire, of ADR Option, Inc., a mediator with extensive experience in labor and employment litigation.  Subsequently, the parties attended a full day settlement conference before the Honorable Arnold C. Rapoport and the Honorable Edward D. Reibman.  The parties continued to engage in serious negotiations thereafter, which culminated in their reaching the conditional settlement discussed herein.

Class Counsel have represented the Class vigorously and have achieved an extraordinary result for the Class: a total of **$4.5 million**.[2]  Based upon initial

---

[2] Pursuant to the parties' Settlement Agreement, the "Settlement Class" or "Class" is defined as "all non-exempt registered nurses employed by Defendants in the Patient Care

calculations, which may increase or decrease as the result of a number of factors, Class Counsel believe each class member who has worked for Defendants during the maximum amount of the Covered Period (which is January 20, 2008 through May 18, 2012) could receive up to $1,950.00 of compensation from the settlement.  This substantial amount is calculated after attorneys' fees, litigation expenses, enhancement payments, service payments, and class administration expenses are deducted from the proposed Settlement Amount.  It is Class Counsel's belief that the aforementioned amount represents a significant recovery for class members in light of the significant risks associated with continued litigation which includes, but is not limited to, the risk of decertification of the Class.

In recognition of the substantial benefit they have conferred on class members, Class Counsel seek an award of attorneys' fees of 40 percent of the $4.5 million Settlement Amount, as well as reimbursement of their reasonable costs and expenses in the amount of $43,339.03.  Class Counsel's request is made pursuant to the Contingent Fee Agreements entered into with Class Representatives Joni Wright and Lenia Rexrode prior to the initiation of this litigation.  See Executed Contingent Fee Agreements, attached hereto as Exhibit "1."

The requested fee is reasonable given the size of the fund created, the skill and efficiency of Class Counsel in obtaining such a favorable result, the complexity and duration of the litigation, the risk of nonpayment, and the time and effort devoted to the case by Class Counsel.  Moreover, and equally significant, no class member has objected to the requested fee, and the time to object has expired.  A 40 percent fee is consistent

Services Division from January 20, 2008 through May 18, 2012 who were allegedly not compensated for all time worked."

with fee awards in common fund cases in this Circuit and satisfies the cross check of lodestar generated by Class Counsel.  Finally, the requested costs and expenses, which were incurred in furtherance of this litigation, are reasonable.

Accordingly, the Court should grant Class Counsel's Motion and award the requested attorneys' fees, costs, and expenses.

## III.     THE AWARD OF ATTORNEYS' FEES IS FAIR AND REASONABLE

### A.     A Reasonable Percentage of the Settlement Amount is the Appropriate Method of Awarding Attorneys' Fees in Common Fund Cases

For their efforts in creating a common fund for the benefit of the Settlement Class, Class Counsel seek as attorneys' fees 40 percent of the fund recovered for the Class.  It is well-settled in this District and this Circuit that a fee award is appropriate in a case like this where a common fund for the benefit of class members is created through the efforts of counsel.

Third Circuit case law establishes two methods for evaluating the award of attorneys fees — the lodestar approach and the percentage-of-the-recovery approach — and each method has attributes suited to different types of cases.  In re GM Trucks Litig., 55 F.3d 768, 820-21 (3d Cir. 1995) (citing Report of the Third Circuit Task Force on Court Awarded Attorney Fees, 108 F.R.D. 237, 250-53 (1985) (hereinafter, "Report re Attorney Fees"); In re AremisSoft Corp. Sec. Litig., 210 F.R.D. 109, 128 (D.N.J. 2002)).  When approving a fee award, a court must first categorize the action it is adjudicating and then "primarily rely on the corresponding method of awarding fees."  In re GM Trucks Litig., 55 F.3d at 821.  After determining and applying the appropriate method, the court may use the other method as a cross-check to double check the fee.  Id.

This Circuit has emphasized that "[t]he percentage-of-recovery method is generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'"  In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 300 (3d Cir. 2005) (quoting In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 333 (3d Cir. 1998).[3]  The percentage-of-recovery method is used in common fund cases on the theory that the class would be unjustly enriched if it did not compensate counsels' work in generating the fund.  In re GM Trucks Litig., 55 F.3d at 821 (citing Report re Attorney Fees, 108 F.R.D. at 250).  See also Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp., 487 F.2d 161, 165 (3d Cir. 1973) ("The award of fees under the equitable fund doctrine is analogous to an action in quantum meruit: the individual seeking compensation has, by his actions, benefited another and seeks payment for the value of the service

---

[3] Under the percentage-of-recovery approach, the Court awards a percentage of the fund created by the attorneys' efforts as reasonable attorneys' fees.  The preference for the percentage-of-recovery method in common fund cases originated in the 1985 Third Circuit Task Force Report on Court Awarded Attorneys Fees:

> As the 1985 Task Force Report recognized, using the lodestar method in the common fund context creates numerous problems.  First, because the lodestar compensates lawyers based on hours worked rather than results achieved, there is a risk that it will cause lawyers to work excessive hours, inflate their hourly rate, or decline beneficial settlement offers that are made early in litigation.  Second, requiring courts to decide how many hours a lawyer "reasonably" worked in pursuing a given matter requires an enormous investment of judicial time. Third, though creating the illusion of mathematical precision, the lodestar method can be quite subjective and can produce wildly varying awards in otherwise similar cases.

In re Cendant Corp. Litig., 264 F.3d 201, 256 (3d Cir. 2001) (citing Report re Attorney Fees, 108 F.R.D. at 246-48). See also id. ("In light of these criticisms, the 1985 Task Force Report recommended a different device for setting attorneys fees in common fund class actions: the percentage-of-recovery method. This Court has generally accepted that recommendation.") (citations omitted); Report: Third Circuit Task Force Report on Selection of Class Counsel, 74 Temp. L. Rev. 689, 776 (2001) ("The 1985 Task Force made a compelling case for rejecting the lodestar approach in common fund cases. We see nothing that has changed in the interim to diminish the power of the arguments made in 1985.").

performed.")).  As a court in this District has stated, "Attorneys who represent a class and aid in the creation of a settlement fund are entitled to compensation for legal services offered to the settlement fund under the common fund doctrine."  In re AremisSoft, 210 F.R.D. at 128.  The Third Circuit has explained that the goal of the percentage-of-the-recovery method is to ensure "that competent counsel continue to undertake risky, complex, and novel litigation."  Gunter V. Ridgewood Energy Corp., 223 F.3d 190, 198 (3d Cir. 2000) (quoting Manual for Complex Litigation § 24.121 at 207).

Here, the percentage-of-the-recovery method is appropriate.[4]  First, the Agreement in this case was negotiated to create a common fund of $4.5 million to benefit a large class of individuals who have not entered into retainer agreements with counsel. This is the classic situation for application of the percentage-of-the-recovery method. Second, the use of the percentage method decreases the burden imposed on the court by limiting the detailed and time-consuming lodestar analysis while assuring that the class members do not experience undue delay in receiving their share of the settlement.  See In re Activision Sec. Litig., 723 F. Supp. 1373 (N.D. Cal. 1989); Shaw v. Toshiba Info. Sys., 91 F. Supp. 2d 942, 964 (E.D. Tex. 2000) ("The lodestar method voraciously consumes enormous judicial resources, unnecessarily complicates already complex litigation, and inaccurately reflects the value of services performed.").  Third, it most

---

[4] Even though the FLSA has a fee shifting provision, see 21 U.S.C. § 216(b), this case should appropriately be considered under common fund principles.  Determination of whether the percentage-of-the-recovery method should apply is based upon the common fund nature of the settlement — with the settlement agreement providing that both damages and attorneys' fees are to paid from the settlement fund — not the underlying nature of the action.  Moench v. Robertson, 1996 U.S. Dist. LEXIS 21898, at *14 (D.N.J. 1996) (awarding 35 percent of common fund) (citing Report re Attorney Fees, 108 F.R.D. at 269).  See also Erie County Retirees Assoc. v. County of Erie, 192 F. Supp. 2d 369, 382-83 (W.D. Pa. 2002) (even though ADEA had a fee shifting provision which incorporated the fee shifting provision of the FLSA, settlement agreement provided for payment of attorneys' fees and damages from common fund; therefore 38 percent of common fund was awarded).

closely aligns the lawyers' interest in being paid a fair fee with the Class' interest in achieving the maximum possible recovery in employment actions. See In re Prudential Ins. Co., 148 F.3d at 333 n.108 ("Others contend the lodestar method creates a rift between the class and its counsel, and may lead to collusive settlements in which plaintiffs' attorneys are willing to accept a low settlement in exchange for lucrative fees."). Finally, where, as here, the settlement releases the Defendants from liability for both damages and attorneys' fees, the percentage of recovery method is the most appropriate. See Erie County Retirees Assoc. v. County of Erie, 192 F. Supp. 2d 369, 377 (W.D. Pa. 2002) (holding that it is more appropriate to use the percentage-of-recovery method since the settlement releases the defendants from liability for both damages and attorneys' fees).

As discussed below, 40 percent of the recovery is an appropriate fee in this case, and the lodestar cross-check demonstrates that such a fee is reasonable.

**B.    Forty Percent of the Settlement Amount is an Appropriate Fee in This Case**

In determining what percentage fee is appropriate, courts in this Circuit consider seven factors:

> (1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases ... the district courts should cross-check the percentage award at which they arrive against the "lodestar" method.

Gunter, 223 F.3d at 195 n.1. The Third Circuit has stressed that these factors "need not be applied in a formulaic way. Each case is different, and in certain cases, one factor

may outweigh the rest." In re Rite Aid, 396 F.3d at 301.  See also id. at 303 ("we have generally cautioned against overly formulaic approach in assessing and determining the amounts and reasonableness of attorneys' fees.").

In the instant matter, application of the seven Gunter factors to this case, as well as the lodestar cross-check, overwhelmingly supports a 40 percent fee award.

### 1.      Size of The Fund Created And Number Of Persons Benefited

As set forth in the Memorandum of Law in Support of Plaintiffs' Motion for an Order Certifying the Settlement Class, Granting Enhancement Payments and Service Payments, and Approving the Settlement Agreement, through the efforts of Class Counsel, a substantial fund has been created for the benefit of the Settlement Class, a group comprised of 2,721 persons.  A cash settlement of $4.5 million has been obtained solely through the efforts of Class Counsel.  This settlement amount is significant, especially when considered in view of the risks and obstacles to recovery presented in this case, as discussed below.

Pursuant to the Settlement Agreement, Defendants will pay a substantial amount, $4.5 million, which will be used to compensate class members pursuant to the claims procedure.  Based upon initial calculations, which may increase or decrease as the result of a number of factors, Class Counsel believe each class member who has worked for Defendants during the entire Covered Period could receive up to $1,950.00 of compensation from the Settlement Amount.  This substantial amount is calculated after attorneys' fees, litigation expenses, enhancement payments, service payments, and class administration expenses are deducted from the proposed Settlement Amount.   It is Class Counsel's belief that the aforementioned amount represents a significant recovery for

class members in light of the significant risks associated with continued litigation, including the risk of decertification of the Class.

In sum, because the size of the Common Fund created by Class Counsel is so large considering the low number of individuals benefited, this factor weighs in favor of Counsel's 40 percent fee. What's more, and even more importantly, even after subtracting the requested attorneys' fees, costs and administration expenses, it is Class Counsel's belief that the class members will receive a significant amount of the overtime wages that could have reasonably been proven at trial.

### 2. Presence or Absence of Substantial Objections to the Proposed Attorneys' Fees

The presence or absence of "substantial objections by members of the class to the settlement terms and/or fees requested by counsel" is probative to assessing the settlement. Gunter, 223 F.3d at 195 n.1. Here, 2,721 Class Notices have been mailed to potential class members at their last known address. See Affidavit of William Wickersham of RG/2, attached hereto as Exhibit "2." The Class Notice explained the settlement in this matter and informed class members of the attorneys' fee and expenses request of Class Counsel. See Class Notice, attached Hereto as Exhibit "3." In fact, the Class Notice specifically informed class members that Class Counsel would request a fee of up to 40 percent of the Settlement Amount. See Exhibit 3. **No member of the Class has objected to the proposed fee, and the deadline for objections, July 7, 2012, has passed**. See Exhibit 2. In addition, no class members have objected to the settlement, and only 134 individuals have requested exclusion. Id. This is a significant indicator of class members' approval and thus weighs in favor of Class Counsel's fee request. See In re Lucent Technologies, Inc. Sec. Litig., 327 F. Supp. 2d 435, 431 (D.N.J. 2004). See

also In re Rent-Way Secs. Litig., 305 F. Supp. 2d 491, 515 (W.D. Pa. 2003) (the absence

of substantial objections by class members to the fee application supports the

reasonableness of Counsel's request); In re Cmty. Bank of N. Va., 2008 U.S. Dist.

LEXIS 62787, at *27-28 (W.D. Pa. Aug. 14, 2008) ("The small number of class members

who chose to opt out or object relative to the size of the class supports approval of the

settlement."); In re SmithKline Beckman Corp. Sec. Litig., 751 F. Supp. 525, 530 (E.D.

Pa. 1990) ("Both the utter absence of objections and the nominal number of shareholders

who have exercised their right to opt out of this litigation militate strongly in favor of

approval of the settlement."); Gilman v. Independence Blue Cross, 1997 U.S. Dist.

LEXIS 15481, at *20-21 (E.D. Pa. Oct. 6, 1997) ("The small number of opt-outs and the

absence of any opposition to the settlement strongly weigh in favor of approval.").[5]

---

[5] At least one study found that while the rate of objection to a settlement is negatively correlated with the likelihood that the settlement will be approved, there was no evidence to suggest that the opt-out rate had any effect on settlement approval.  Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1533 (2004).  Eisenberg and Miller found, in pertinent part, that:

> [T]he percentage of objectors was greater in cases where the settlement was rejected than in cases where the settlement was approved. This finding suggests that courts do take the percentage of objectors into account, at least to some extent, when ruling on the fairness of settlements. Assuming judicial decisions approving or disapproving settlements are generally accurate, this finding also suggests that levels of objection provide some evidence of a settlement's fairness, adequacy, and reasonableness. When it comes to opt-outs, however, the results are not as predicted: the mean percentage of opt-outs in approved settlements was in fact greater than the mean percentage of opt-outs in disapproved settlements (although the median percentage of opt-outs was higher in disapproved settlements than in approved ones).

Id. at 1564.  Furthermore, another study found that "Class members are considerably more likely to opt out of mass tort, employment, and commercial litigation, where individual recoveries are generally higher, and less likely to opt out of consumer cases, where individual recoveries are generally lower."  Barbara J. Rothstein & Thomas E. Willing, *Managing Class Action Litigation: A Pocket Guide for Judges* at 20 (2005).

### 3.    Skill and Efficiency of the Attorneys Involved

The "single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." In re AremisSoft, 210 F.R.D. at 132. (quoting Cullen v. Whitman Med. Corp., 197 F.R.D. 136, 149 (E.D. Pa. 2000)). The skill and efficiency of the attorneys involved is "measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." Nichols v. SmithKline Beecham Corp., 2005 U.S. Dist. LEXIS 7061, at *71 (E.D. Pa. April 22, 2005) (quoting In re Ikon Office Solutions, Inc. Sec. Litig., 194 F.R.D. 166, 194 (E.D. Pa. 2000)).

Class Counsel has significant employment law experience which includes, but is not limited to, experience handling complex wage and hour class actions. Further, the recovery achieved – $4.5 million – is substantial given, as discussed above, the relatively small size of the class benefited, and the risks that counsel would not recover anything in this case, as discussed in more detail below. Moreover, the Settlement Agreement, in addition to monetary relief, also requires the Defendants to remain in compliance with all state and federal wage and hour laws. See Settlement Agreement, Section 2.7.1.

The "quality and vigor of opposing counsel is also relevant in evaluating the quality of the services provided by" Class Counsel. In re Lucent Technologies, 327 F. Supp. 2d at 437. Defendants were well-represented by a major law firm, Post & Schell, P.C., which ranks among the most respected, competent, and experienced law firms in the Philadelphia area.

Thus, the skill and efficiency of Class Counsel weighs in favor of a 40 percent fee award.

### 4.     Complexity And Duration of the Litigation

The fourth Gunter factor is the complexity and duration of the litigation. Gunter, 223 F.3d at 195 n.1. This factor also weighs in favor of the 40 percent fee request.

Class Counsel has litigated this case for an extensive amount of time.  During the approximately twenty-seven (27) months this matter was in active litigation, Class Counsel participated in thirty-nine (39) depositions, reviewed in excess of 20,000 documents, filed fourteen (14) motions, including two (2) motions for class certification, responded to five (5) motions filed by Defendants, and participated in a total of twelve (12) telephonic conferences with the Court.  Additionally, Class Counsel has interviewed and drafted declarations for a significant number of class members, taken 100s of phone calls from class members inquiring about the litigation, responded to written discovery and propounding written discovery, engaged in discovery disputes, and conducted extensive research of Pennsylvanian state wage and hour laws and the FLSA.  Finally, Class Counsel engaged in two (2) full day mediation sessions, a full day settlement conference with the Court, and engaged in ongoing settlement negotiations thereafter.  Solely through the above work of Class Counsel, a sizeable recovery was achieved for the Class Representatives and the Settlement Class.

Moreover, this case involved complex issues under the FLSA and the Portal-to-Portal Act.  See Frank v. Eastman Kodak Co., 228 F.R.D. 174 (W.D.N.Y. 2005) (expertise required for a FLSA class action); Goldman v. RadioShack Corp., 2006 U.S. Dist. LEXIS 2433, at *15 (E.D. Pa. January 23, 2006) (quoting Barrentine v. Arkansas-

Best Freight Sys., 450 U.S. 738, 743 (1981) (FLSA claims "typically involve complex mixed questions of fact and law . . . .")).  While Class Counsel believe that they would be successful on the merits of the case, a trial in this case would involve significant risks to the claims of the Class because of the fact-intensive nature of proving liability under both the FLSA and Pennsylvania's wage and hour laws, and in light of the defenses available to Defendants, which would pose substantial risk to both liability and damages.  The nature of the allegations asserted and the factual issues involved requires registered nurses to prove how much time was spent before and after shifts performing compensable activities.  See Second Am. Class and Collective Action Compl., ¶¶ 33-48.  This would present a significant hurdle to overcome under both federal and state law theories of liability.  In addition, registered nurses were also faced with the hurdle of not only showing that they did not receive a "bona fide meal period" under the FLSA, but also with the hurdle that on the occasions where they did receive one, that it was still compensable.  Again, this determination would be very fact-intensive and complex.  Finally, there would be a substantial risk that Defendants could significantly minimize damages or avoid liability altogether by decertifying the previously conditionally certified Class.

Finally, the parties engaged in in-depth settlement negotiations.  On January 4, 2012, and again on March 19, 2012, the parties participated in mediation sessions facilitated by Thomas Rutter, Esquire, of ADR Option, Inc., a mediator with extensive experience in labor and employment litigation.  Subsequently, the parties attended a full day settlement conference before the Honorable Arnold C. Rapoport and the Honorable Edward D. Reibman.  The parties continued to engage in serious negotiations thereafter,

which culminated in their reaching the conditional settlement discussed herein.

Based on the above, a 40 percent fee award is appropriate based on the duration and complexity of this litigation.

### 5.      Risk of Nonpayment

Courts recognize that the risk of non-payment in complex cases such as this one is "very real and is heightened when Plaintiffs' Counsel press to achieve the very best result for their clients." In re AremisSoft, 210 F.R.D. at 134. Class Counsel undertook this action under a wholly contingent basis and the risk of non-payment has been high throughout this litigation. See Exhibit 1. Defendants' defenses in this matter posed a real risk to both a finding of liability and damages. These defenses include: whether registered nurses in the PCSD are "similarly situated"; whether registered nurses received a "bona fide meal period" under the FLSA; whether the work performed before and after scheduled shifts was compensable work under the FLSA; and whether Defendants could significantly minimize damages or avoid liability altogether under the *de minimis* doctrine. Although Class Counsel believe this to be a meritorious case, a realistic assessment of the case shows that the risks of decertification of the conditionally certified Class and resolution of liability issues, protracted litigation, the outcome of the trial, and the inevitable appeal process are great.

Had this case not settled, Class Counsel would have vigorously litigated the case without any promise of success and compensation. Defendants would have likely filed for decertification and summary judgment at the conclusion of discovery. Even if this matter survived decertification and summary judgment, Plaintiffs would have expended a substantial amount of money preparing for trial (including hiring experts, engaging in

expert discovery, and drafting motions *in limine*) without any guarantee of success at trial. Further, even if Plaintiffs succeeded at trial, Defendants would have appealed. At every step of the litigation, Defendants could have succeeded. Therefore, Plaintiffs were at great risk for nonpayment.

Moreover, it was apparent that Defendants only wished to settle if they could achieve a complete settlement on behalf of all registered nurses. In re Lucent Technologies, 327 F. Supp. 2d at 438 (defendant would only settle to achieve a global resolution of all Lucent-related lawsuits). The parties crafted such a settlement which would provide for relief for a complete class.

Class Counsel also advanced significant expenses (a total of $43,339.03) that would not have been reimbursed absent a successful result. Lazy Oil Co. v. Witco Corp., 95 F. Supp. 2d 290, 344 (W.D. Pa. 1997) ("[Counsel] invested thousands of hours and over $2 million of their own money in pursuing this case, and there was no assurance that any recovery, by trial or Settlement, would ever be forthcoming.").

In sum, there was a huge risk that Plaintiffs and Plaintiffs Counsel would recover nothing in this litigation.

### 6. Amount of Time Devoted to the Case by Class Counsel

Class Counsel spent approximately 2,814 hours working on this case since the inception of litigation. See Slip Listings for Sobol, Sobol & Murphy, P.C. for Period Ending July, 2012, attached hereto as Exhibit "4."[6] This substantial amount of time further supports the fee request. See Nichols, 2005 U.S. Dist. LEXIS 7061, at *72

---

[6] Due to attorney-client privilege, Class Counsel has only attached the final page or two of each Slip Listing for Wright I, Wright II and Wright III, which set forth the total amount of billable hours, attorneys' fees, and expenses incurred in each action. Upon request, Class Counsel can deliver to the Court's Chambers a complete copy of the Slip Listing entries for each action.

(approving fee when counsel devoted substantial hours of work).  As a result of Class

Counsel's devotion to this case and because Class Counsel is a small law firm, Class

Counsel was forced to abstain from other work.  See Lazy Oil, 95 F. Supp. 2d at 323 ("In

addition to noting the vast amount of work which was required in prosecuting this case,

we also note Class Counsels' representation that their involvement in this litigation

required them to abstain from working on other matters.").  This factor weighs in favor of

Plaintiffs' counsel's fee request.

### 7.   Awards in Other Common Fund Cases

There is no consensus on what percentage of a common fund is reasonable,

although several courts in this circuit have observed that percentage-of-recovery fee

awards generally range from 19 to 45 percent.  See Erie County Retirees Assoc. v.

County of Erie, 192 F. Supp. 2d 369, 378 (W.D. Pa. 2002) (citing Lazy Oil, 95 F. Supp.

2d at 341).  See also In re SmithKline Beckman Corp. Sec. Litig., 751 F. Supp. 525, 533

(E.D. Pa. 1990) (recognizing that courts have awarded attorneys' fees of up to "45% of

the settlement fund created"); In re General Motors Corp. Pick-up Truck Fuel Tank

Prods. Liab. Litig., 55 F.3d 758, 822 (3d Cir. 1995) (in common fund cases "fee awards

have ranged from nineteen percent to forty-five percent of the settlement fund).   "In

arriving at an appropriate percentage," courts "may not rely on a formulaic application of

the appropriate range in awarding fees but must consider the relevant circumstances of

the particular case." County Retirees Assoc., 192 F. Supp. 2d at 381. (citations omitted).

Attorneys' fees of 40 percent are common in this Circuit.  Indeed, the Court in In

re AremisSoft, stated that **"[s]cores of cases exist where fees were awarded in the one-**

**third to one-half of the settlement fund."** In re AremisSoft, 210 F.R.D. at 133-34

(emphasis added).  Attorneys' fees of approximately 40 percent of the common fund, or close to it, have also specifically been awarded in labor and employment class actions. See Ayres v. Chester County, Civ. A. No., 07-3328, E.D. Pa. (Order, dated June 23, 2008) (Kelly, J.) (40 percent of common fund was awarded in FLSA/PMWA case); Erie County Retirees Assoc., 192 F. Supp. 2d at 382-83 (38 percent of common fund was awarded in ADEA case); Frank v. Eastman Kodak Co., 228 F.R.D. 174 (W.D.N.Y. 2005) (almost 40 percent of $125,000 common fund awarded in FLSA case).  In sum, and as the Court noted in Erie County Retirees Assoc., "[f]ee awards ranging from thirty to forty-three percent have been awarded in cases with funds ranging from $400,000 to $6.5 million."  See Erie County Retirees Assoc., 192 F. Supp. 2d at 381.  See also Aamco Automatic Transmissions, Inc., 82 F.R.D. 405, 420 (E.D. Pa. 1979) (approving 43 percent fee); Payson v. Capital One Home Loans, LLC, No. 07-CV-2282, 2009 U.S. Dist. LEXIS 25418, at *10 (D. Kan. March 26, 2009) (approving 40 percent fee); Eastman Kodak Co., 228 F.R.D. at 188 (approving 40 percent fee); In re Eunice Train Derailment, No. 6:00CV1267, 2005 U.S. Dist. LEXIS 46237, at *36 (W.D. La. March 28, 2005) (approving 40 percent fee); Howes v. Atkins, 668 F. Supp. 1021, 1027 (E.D. Kent. 1987) (approving 50 percent fee); In re Ampicillin Antitrust Litigation, 526 F. Supp. 494, 499 (D. D.C. 1981) (approving 45 percent fee); In re Merry-Go-Round Enterprises, Inc., 244 B.R. 327, 330 (Bankr. D. Md. 2000) (approving 40 percent fee in bankruptcy action); Beech Cinema, Inc. v. Twentieth Century Fox Film Corp., 480 F. Supp. 1195, 1199 (S.D.N.Y. 1979) (approving attorneys' fees of more than 50 percent of damages recovered in antitrust action); Brief for Plaintiffs at 3-6, Mitchusson v. Exco Resources, Inc., No. CJ-2010-32, District Court of Caddo County, Oklahoma (Nov. 8, 2011) (citing

thirteen (13) Oklahoma class action common fund settlements where attorneys' fees of 40

percent or greater were approved).

Based on the above-referenced cases, an award of 40 percent of the common fund

is proper in this matter.[7]

### C.      A Lodestar Cross-Check Demonstrates That the Fee Is Reasonable

The Third Circuit has "suggested it is sensible for a court to use a second method

of fee approval [a lodestar analysis] to cross-check its initial fee calculation." In re Rite

Aid, 396 F.3d at 300.  Importantly, "the lodestar cross-check does not trump the primary

reliance on the percentage of common fund method." In re Rite Aid, 396 F.3d at 307.

See also Cendant, 264 F.3d at 285 ("The lodestar cross-check, however, is very time

consuming.  Thus, while the Court should in the first instance test the presumption, if

challenged, by the Gunter factors, it may, if necessary, utilize the lodestar cross-check.").

"The lodestar cross-check calculation need entail neither mathematical precision nor

bean-counting.  The district courts may rely on summaries submitted by the attorneys and

need not review actual billing records.  Furthermore, the resulting multiplier need not fall

within any pre-defined range, provided that the District Court's analysis justifies the

award." In re Rite Aid, 396 F.3d at 306-07. (citations and footnotes omitted). The

reasonableness of the 40 percent fee requested here is thus further demonstrated by the

---

[7] In Prudential, the Third Circuit Court of Appeals considered the following three (3)
other factors that may be relevant to consider in an attorneys' fees case: (1) the value of the
benefits to class members attributable to Class Counsel as compared to other groups; (2) the
percentage fee that would have been negotiated had the case been subject to a private contingent
fee agreement at the time counsel was retained; and (3) if there are "innovative" terms of
settlement.  See In re Prudential Insur. Co., 148 F.3d at 338.  To the extent these factors are
applicable to this matter, they also weigh in favor of Counsel's 40 percent fee.  Indeed, the $4.5
million Settlement Amount was achieved solely by Class Counsel's efforts and the 40 percent fee
is consistent with privately negotiated fee agreements.  See In re Ikon, 194 F.R.D. at 194 (stating
that in private contingency fee cases, plaintiffs' counsel routinely negotiate agreements providing
for between thirty and forty percent).

lodestar cross-check.

The lodestar here is **$984,900.00**.[8]  See Exhibit 4.  The lodestar was calculated by multiplying the total number of hours counsel worked on this matter (2,814) by the reasonable hourly rate of $350.00.[9]  The multiplier in this case (i.e., cross-check) is therefore **1.8** (1,800,000/984,900 = 1.8).  There can be no serious question that a multiplier of approximately **1.8** is reasonable. See Prudential, 148 F.3d at 341 ("multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied") (quoting 3 Herbert Newberg & Alba Conte, Newberg on Class Actions § 14.03, at 14-15 (3d ed. 1992)).  See also In re Cendant PRIDES Litig., 243 F.3d 722, 742 (3d Cir. 2001) (surveying cases to determine that lodestar multiples range from 1.35 to 2.99); In re Linerboard Antitrust Litig., 2004 U.S. Dist. LEXIS 10532, at *50 (E.D. Pa. June 2, 2004) ("The Court also notes that during 2001-2003, the average multiplier approved in common fund class actions was 4.35 and during 30 year period from 1973-2003, average multiplier approved in common fund class actions was 3.89.").  Therefore, the lodestar cross-check here indicates that the 40 percent fee award is reasonable.

## IV.   **THE COURT SHOULD AWARD COUNSEL'S COSTS AND EXPENSES**

Class Counsel "is entitled to reimbursement for expenses adequately documented and reasonably and appropriately incurred in the prosecution of the class action." Abrams v. Lightolier, Inc., 50 F.3d 1204, 1225 (3d Cir. 1995); In re AremisSoft, 210

---

[8] It should also be noted that Class Counsel will expend additional time and expense in monitoring the implementation of the settlement going forward and addressing any issues that may arise concerning the distribution of the class member settlement awards.

[9] The reasonable hourly rate was determined by averaging the hourly rate of each attorney at Sobol, Sobol & Murphy, P.C.  (i.e., ($450/hr + $350/hr + $350/hr + $250/hr) / 4 = $350/hr.).

F.R.D. at 135.  Courts in this Circuit have held that photocopying expenses, telephone and facsimile charges, postage, messenger and express mail service charges, witness fees, filing fees, computer-assisted research such as Lexis and Westlaw, and costs associated with expert witnesses and consultants are reasonably incurred in connection with the prosecution of complex litigation.  Abrams, 50 F.3d at 1225; In re AremisSoft, 210 F.R.D. at 135; In re Safely Components Internat'l, 166 F. Supp.2d at 108; Cullen, 197 F.R.D. at 151.  The reasonable costs and expenses incurred by Class Counsel are identified in Exhibit 4, and include, among other things, filing fees, investigation fees, class notice fees, copying costs, delivery services, postage, deposition fees, the mediator's fees, and travel expenses.  See Exhibit 4.

Since the commencement of this case, Class Counsel has advanced all the costs and expenses.  These costs and expenses advanced by counsel were reasonable and necessary to the prosecution of the case, and should therefore be reimbursed from the Settlement Amount.  The Court should award Class Counsel $43,339.03. See Exhibit 4.

## V.   CONCLUSION

For the foregoing reasons, Class Counsel respectfully requests that the Court award attorneys' fees of 40 percent of the Settlement Amount, as well as expenses in the amount of $43,339.03.

**SOBOL, SOBOL & MURPHY, P.C.**

By: /s/ Michael Murphy
Michael Murphy, Esquire
Martin J. Sobol, Esquire
Daniel J. Sobol, Esquire
1760 Market Street, Suite 1200
Philadelphia, PA 19103
(215) 988-0193
Dated: July 9, 2012          Fax: (215) 988-0193